IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CRONIE LLOYD, | ) CASE NO. 1:24-CV-00622-JJH |
| Plaintiff, | ) |
| vs. | ) JUDGE JEFFREY J. HELMICK |
| | ) UNITED STATES DISTRICT JUDGE |
| ACTING WARDEN MISTY MACKEY, | ) |
| | ) MAGISTRATE JUDGE |
| Defendant. | ) JONATHAN D. GREENBERG |
| | ) |
| | ) **REPORT & RECOMMENDATION** |

This matter is before the magistrate judge pursuant to Local Rule 72.2. Before the Court is the Petition of Cronie Lloyd ("Lloyd" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Lloyd is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Lloyd*, Cuyahoga County Court of Common Pleas, Case No. 19-CR-637149. For the following reasons, the undersigned recommends that the Petition be DENIED.

### I. SUMMARY OF FACTS

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The state appellate court summarized the facts underlying Lloyd's conviction as follows:

> {¶ 4} On February 3, 2019, Lloyd and Power were involved in a minor traffic accident while leaving a bar located in Independence, Ohio. The men pulled their vehicles into a nearby gas station, where they proceeded to engage in a verbal argument. During the verbal dispute, the men made gestures towards their vehicles and assessed the damage caused by the accident. The men were standing several feet apart when Power began

1

walking towards the rear of his vehicle. As Power walked past Lloyd, Lloyd suddenly threw a single punch, without warning, that connected with Power's jaw. Power immediately lost consciousness and fell to the ground, striking his head on the concrete. Lloyd unsuccessfully attempted to throw a second punch as Power was falling to the ground. The incident, which lasted less than two minutes, was captured by nearby surveillance cameras.

{¶ 5} Lloyd quickly fled the scene without rendering aid or calling 911. Officer Everett Haworth ("Officer Everett") of the Independence Police Department testified that he was patrolling the area when he observed Lloyd's vehicle pull out of the gas station at a high rate of speed. Upon observing Lloyd drive through a red light, Officer Haworth activated his overhead lights and attempted to initiate a traffic stop of Lloyd's vehicle. Lloyd, however, ignored Officer Haworth's siren and "continued to accelerate." (Tr. 170.) Officer Haworth explained that he decided to terminate his pursuit of Lloyd's vehicle because he received a radio broadcast to respond to an altercation that was taking place in the parking lot of a nearby Denny's restaurant. Officer Haworth stated that he prioritized the "40-person brawl" over Lloyd's traffic violations.

{¶ 6} After resolving the purported conflict in the Denny's parking lot, Officer Haworth noticed that there was a vehicle parked at the gas station where his pursuit of Lloyd's vehicle had begun. Upon further investigation, Officer Haworth observed "an older white male," later identified as Power, "laying on the pavement." (Tr. 171.) Power was unconscious and had a large laceration on the back of his head. Officer Haworth immediately called for an ambulance, and Power was transported to a nearby hospital. Power was pronounced dead two days after sustaining his injuries.

{¶ 7} Officer Haworth testified that he then made contact with the gas station attendant and obtained permission to review the gas station's security video footage. Based on his review of the video footage, Officer Haworth determined that a crime had occurred and that it was necessary to secure the scene and Power's vehicle. Relevant to this appeal, Officer Haworth testified that he collected a cigarette that was found near Power's body. Officer Haworth explained that he "believe[d] that the cigarette may have fallen from either the suspect or the victim." (Tr. 178.)

{¶ 8} Sergeant Michael Murphy ("Sgt. Murphy") of the Independence Police Department testified that he was assigned to investigate the incident. In the course of his investigation, Sgt. Murphy photographed Power in the hospital, spoke with Power's relatives, and reviewed surveillance footage recovered from the gas station and the bar where Lloyd and Power had been prior to the traffic accident. Following Power's death, the investigating officers submitted physical evidence to the crime laboratory for forensic testing, including the cigarette recovered from the scene and swabs taken

2

from areas of Power's vehicle that Lloyd had touched to regain his balance after punching Power.

{¶ 9} Andrea Davis ("Davis"), a forensic scientist with the Ohio Bureau of Criminal Investigation, testified that the cigarette and a swab taken from the passenger's side door of Power's vehicle contained a profile that was consistent with Lloyd's DNA. In addition, the investigating officers confirmed that Lloyd was the owner of a vehicle that was the same color, make, and model as the vehicle depicted on the surveillance video footage.

{¶ 10} Dr. David Dolinak, M.D. ("Dr. Dolinak"), provided extensive testimony regarding Power's medical history and the scope and nature of his injuries. Based on his review of the relevant medical records, Dr. Dolinak testified that Power sustained extensive head injuries, including fractures of his skull and bleeding and bruising in his brain. Dr. Dolinak explained that the initial impact to the left side of Power's jaw cause him to "fall to the ground hard enough to hit his head fairly hard on the ground." (Tr. 428.) Based on the nature and extent of his injuries, Dr. Dolinak opined, to a reasonable degree of medical certainty, that Power's cause of death was a blunt force head injury and that the manner of death was a homicide.

{¶ 11} At the conclusion of trial, Lloyd was found guilty of murder and felonious assault as charged in the indictment. He was sentenced to life in prison with the possibility of parole after 15 years.

*State v. Lloyd*, 2021-Ohio-1808, ¶¶ 4-11.

## II. PROCEDURAL HISTORY

**A.  Trial Court Proceedings**

On February 26, 2019, a Cuyahoga County Grand Jury indicted Lloyd on the following charges: murder B pursuant to O.R.C. § 2903.02 and felonious assault with a notice of prior conviction and a repeat violent offender specification. (Doc. No. 7-1, Ex. 1.) Lloyd entered pleas of not guilty to all charges. (*Id*. at Ex. 2.)

On September 11, 2019, Lloyd filed waivers of jury trial on the notice of prior conviction and the repeat violent offender specifications. (*Id*., Ex. 3-4.)

3

The case proceeded to jury trial. On September 17, 2019, the jury returned its verdict, finding Lloyd guilty of all charges. (Doc. No. 7, Ex. 5.) The trial court merged the counts for sentencing, and sentenced Lloyd to life in prison with parole eligibility after 15 years. (*Id*.)

**B.     Direct Appeal**

Lloyd, through counsel, filed a timely notice of appeal to the Eighth District Court of Appeals. (Doc. No. 7-1, Ex. 6.) On July 20, 2020, counsel filed a Motion to Accept Appellant's Merit Brief Out of Rule because the brief was filed late due to technological issues. (*Id*., Ex. 7.) The Court granted the motion, and deemed it filed on July 20, 2020. (*Id*., Ex. 9.)  In his appellate brief, Lloyd raised the following assignments of error:

>    I.     MR. LLOYD WAS DENIED DUE PROCESS OF LAW AND HIS RIGHT TO A FAIR AND IMPARTIAL JURY WHEN THE STATE WAS PERMITTED TO REMOVE A JUROR FOR CAUSE WHEN THAT JUROR TESTIFIED THAT SHE [*sic*]
>
>    II.    MR. LLOYD WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO REQUEST A JURY INSTRUCTION ON THE LESSER INCLUDED OFFENSES OF ASSAULT AND INVOLUNTARY MANSLAUGHTER.
>
>    III.   MR. LLOYD WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO REQUEST A JURY INSTRUCTION ON THE INFERIOR OFFENSE OF AGGRAVATED ASSAULT AND VOLUNTARY MANSLAUGHTER
>
>    IV.    MR. LLOYD WAS DENIED DUE PROCESS OF LAW AND THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO INSTRUCT THE JURY ON THE OFFENSES RAISED BY THE EVIDENCE.
>
>    V.     MR. LLOYD'S CONVICTION FOR FELONIOUS ASSAULT AND FELONY-MURDER ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE

(*Id*., Ex. 8.) The State filed a brief in response. (*Id*., Ex. 10.) On March 16, 2021, Lloyd filed a Notice of Intention to Cite Additional Authority at Oral Argument. (*Id*., Ex. 11.)

On May 27, 2021, the state appellate court affirmed Lloyd's convictions. (*Id*., Ex. 12.)

On July 12, 2021, Lloyd, through counsel, filed a Notice of Appeal with the Supreme Court of Ohio. (*Id*., Ex. 13.) In his Memorandum in Support of Jurisdiction, Lloyd raised the following Propositions of Law:

> I. The throwing of a single punch to the head, without more, may be the reckless – not knowing – causing of serious physical harm.
>
> II. For purposes of a claim of ineffective assistance of counsel, the presumption of reasonable trial strategy can be rebutted by evidence of trial counsel's persistent misunderstanding of the elements of the offense charged.

(*Id*., Ex. 14.) The State filed a response opposing Lloyd's discretionary appeal. (*Id*., Ex. 15.)

On September 28, 2021, the Supreme Court of Ohio accepted the appeal on Proposition of Law No. II only. (*Id*., Ex. 16.) On December 23, 2021, Lloyd filed his merit brief, raising the following Proposition of Law: "For the purposes of a claim of ineffective assistance of counsel, the presumption of reasonable trial strategy can be rebutted by evidence of trial counsel's persistent misunderstanding of the elements of the offense charged." (*Id*., Ex. 17.) On February 14, 2022, the State filed its merit brief. (*Id*., Ex. 18.) On March 7, 2022, Lloyd filed his reply brief. (*Id*., Ex. 19.) On March 7, 2022, Lloyd both an amended reply brief and a second amended reply brief. (*Id*., Ex. 20-21.) On December 1, 2022, the Supreme Court of Ohio affirmed the judgment of the appellate court. (*Id*., Ex. 22-23.)

**C.     United States Supreme Court**

On April 26, 2023, Lloyd, through counsel, filed a Petition for Writ of Certiorari in the Supreme Court of the United States. (*Id*., Ex. 24.) He posed the following reasons for granting the petition:

> I. When counsel pursues a legally and factually irrelevant theory, it rebuts the presumption of competence and reasonable trial strategy.
>
> > a. Arguing a legally and factually irrelevant theory should prove to a reviewing court that counsel misunderstood the law.

5

> b. A reviewing court must address the impact of counsel's misapprehension of the law on the presumption of competence and reasonable trial strategy.
>
> II. There is no coherence in how State and Federal Courts determine what constitutes reasonable trial strategy in the ineffective assistance of counsel.

(*Id.*) On May 16, 2023, the State filed its Brief in Opposition. (*Id.*, Ex. 26.) On June 2, 2023, Lloyd filed his reply brief. (*Id.*, Ex. 27.)

On June 20, 2023, the Supreme Court of the United States denied Lloyd's Petition for Writ of Certiorari. (*Id.*, Ex. 28.)

**D.      Federal Habeas Petition**

On April 5, 2024, Lloyd, through counsel, filed a Petition for Writ of Habeas Corpus in this Court. On April 6, 2024, Lloyd filed an Amended Petition and asserted the following grounds for relief:

> **GROUND ONE**: The Petitioner, Cronie Lloyd, was denied his right to effective assistance of counsel in violation of the protections guaranteed to him by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and pursuant to the holding of *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

(Doc. No. 2.)

On July 2, 2024, Warden Misty Mackey ("Respondent") filed her Return of Writ. (Doc. No. 7.) Lloyd filed a Traverse on September 26, 2024. (Doc. No. 10.)

### III. REVIEW ON THE MERITS

**A.      Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

6

>  to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v.Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005). Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012). *See also Lopez v.Smith*, ––– U.S. –––, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'" (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. *See also*

7

*Shimel*, 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**B.  Analysis**

In his sole ground for relief, Lloyd argues that he received ineffective assistance of counsel in violation of the protections guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and pursuant to *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052 (1984). (Doc.

8

No. 2-2 at 12.) Lloyd argues his counsel "did not understand the limited nature of what the State of Ohio had to prove to convict Lloyd." (*Id*. at 13.) He argues his counsel repeatedly stated in her closing argument that Lloyd did not intend to kill Powers, and that that argument was factually and legally irrelevant to his felony murder charge. (*Id*. at 13-14.) Lloyd asserts that her mistake of law "pervaded all aspects of her representation at trial." (*Id*. at 15.) Lloyd states his counsel's "misunderstanding of the law means that the presumption of competence should be stripped from the ineffective assistance of counsel analysis." (*Id*.) Lloyd asserts the reviewing state courts "engaged in an unreasonable reading of the record and unreasonable application of *Strickland* . . . excusing all mistakes as strategy." (*Id*.)

Lloyd argues the Supreme Court of Ohio failed to take in the totality of the record. (*Id*. at 16.) Lloyd claims not only did his counsel misstate the law during closing argument, but missed opportunities to present a real defense by waiving her opening statement, and her attempts to "sow doubt" during testimony "were doomed to fail." (*Id*.) He claims counsel "failed to develop the only defense that mattered – Lloyd's mindset as it related to the underlying felony." (*Id*.) Lloyd contends counsel's "failure to appreciate the elements of the offense in this case also caused counsel to fail to ask for lesser included offense and inferior degree offense instructions." (*Id*.) Lloyd states that counsel failed to develop the record that would have supported a request for those instructions. (*Id*.) Lloyd states the "misunderstanding of the elements of the offense" is "woven throughout the record" and the "state courts' failure to find that was an unreasonable determination." (*Id*. at 17.)

Lloyd argues the Supreme Court of Ohio found the record did not prove Lloyd's counsel misunderstood the law, but even when the court assumed she had misunderstood the law, it failed to say what impact it would have had. (*Id*.) Lloyd claims that decisions made by an attorney under a misunderstanding should not enjoy the presumption of competence. (*Id*. at 18-21.)

Respondent argues the Supreme Court of Ohio's decision was not an unreasonable determination of the facts. (Doc. No. 7 at 17.) Respondent states the Supreme Court of Ohio found that, after reviewing the record as a whole, Lloyd's counsel's argument that he didn't know one punch would have killed the victim specified the serious harm that occurred – not that Lloyd lacked intent to kill the victim. (*Id*.) Respondent contends counsel chose to focus on the lack of proof of the element "knowingly" and argued Lloyd was not aware his conduct would probably cause the serious physical harm that it did. (*Id*. at 18-19.) Respondent contends that counsel raised a viable defense, challenging the state's proof that Lloyd knowingly caused serious physical harm. (*Id*. at 19.)

Respondent argues Lloyd was not entitled to alternate jury instructions, and as the Supreme Court of Ohio found, a request for them would have been futile. (*Id*.) Respondent states the altercation was on video, there was no evidence of provocation on the part of the victim, and there was no way a jury could have found Lloyd did not knowingly cause serious physical harm given the hard punch thrown at the senior citizen victim. (*Id*.)

Respondent argues counsel's decision to waive opening statement does not show she misunderstood the law. (*Id*. at 20.) Counsel chose to waive opening statements to the close of the state's evidence, and then later waived the opening statement entirely after discussion with Lloyd and his consent. (*Id*.)

Respondent maintains the Supreme Court of Ohio's decision was not contrary to or an unreasonable application of *Strickland*. (*Id*.) In response to Lloyd's argument that the Supreme Court of Ohio's decision was contrary to *Strickland* because the court "failed to say what impact [counsel's misunderstanding] would have had on the presumption of competence", Respondent states the court held Lloyd failed to show that counsel misunderstood the law, thus the court did not need to state what impact a misunderstanding would have had. (*Id*.) Respondent argues the Supreme Court of Ohio "held that Lloyd did not satisfy his burden under *Strickland*, finding that Lloyd's counsel 'had good reason to focus the jury on the specific serious

physical harm that occurred here, rather than serious physical harm in the abstract.'" (*Id*. at 21, citing *Lloyd*, 2022-Ohio-4259, ¶23.) Respondent asserts that even if counsel "misunderstood the law, counsel's failure to request alternative jury instructions was not objectively unreasonable because Lloyd was not entitled to the instructions at all. (*Id*., citing *Lloyd*, 2022-Ohio-4259, ¶30.) Respondent notes the Supreme Court of Ohio declined to address Lloyd's argument concerning plea negotiations because it was not included in the arguments raised to the state court of appeals. (*Id*.)

In his Traverse, Lloyd claims his counsel "believed she could secure Lloyd's acquittal if the jury found that he did not knowingly or intentionally cause Power's *death* with a single punch", which was a misunderstanding of the law. (Doc. No. 10 at 2.) (Emphasis original.) Lloyd asserts the dissenting justices of the Ohio Supreme Court "got it right" when they wrote that they would have reversed and remanded to determine "whether Lloyd was prejudiced by the deficient performance of his trial counsel." (*Id*. at 3-4.) Lloyd reiterates that the Supreme Court of Ohio's decision was based on an unreasonable determination of the facts because "the only conclusion that could be fairly drawn" from the record is that counsel misunderstood the law of felony murder. (*Id*. at 10.) Lloyd states counsel's arguments to the jury were a misstatement of the state's burden because the state need only prove Lloyd intended to cause any type of serious physical harm, not death. (*Id*. at 13-14.) Lloyd again claims counsel's misunderstanding of the law resulted in her failing to provide a viable defense, arguing that she should have claimed he lacked the mens rea required for the underlying felony. (*Id*. at 14.) Lloyd contends the Supreme Court of Ohio failed to follow *Strickland*, clearly established federal law, when it failed to find that the presumption of competence was rebutted by counsel's misunderstanding of the law. (*Id*. at 15.) Lloyd argues that if counsel misunderstood the law, the presumption of competence must be rebutted, which the Supreme Court of Ohio did not properly consider. (*Id*. at 20.)

Lloyd raised an ineffective assistance of counsel claim through the state courts. (Doc. No. 7-1, Ex. 8, 14, 17.) The Supreme Court of Ohio, the last court to decide the issue, made the following findings:

> {¶ 14} In all criminal prosecutions, the accused has the right to "the Assistance of Counsel for his defence." Sixth Amendment to the U.S. Constitution. Inherent in the right to counsel is "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), fn. 14. Attorneys are "strongly presumed to have rendered adequate assistance." *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, that presumption can be overcome.
>
> {¶ 15} The "benchmark" for determining ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. 2052. To establish that an attorney's conduct fell below the benchmark, the defendant must satisfy a two-part test. The defendant first must show that "counsel's performance was deficient." *Id.* at 687, 104 S.Ct. 2052. The defendant then "must show that the deficient performance prejudiced the defense." *Id.*
>
> {¶ 16} Courts determine deficient performance by asking whether the attorney's conduct "fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. The reasonableness of the attorney's conduct must be judged based on "the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. 2052. Only when the attorney's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" has the attorney engaged in deficient performance. *Id.* at 687, 104 S.Ct. 2052.
>
> {¶ 17} When the alleged error concerns what could be viewed as trial strategy, courts must be "highly deferential" to the attorney's strategic decisions. *Id.*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. After all, each case is unique and capable of being argued in a variety of ways. *See id.* at 689-690, 104 S.Ct. 2052. Nobody can predict the future, and "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689, 104 S.Ct. 2052. Hindsight is 20/20 after all. Accordingly, the defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).
>
> {¶ 18} To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

12

result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. The error must be so serious as to "undermine confidence in the outcome." *Id.*

### A. The Record Does Not Establish that Lloyd's Counsel Was Deficient

{¶ 19} The premise of Lloyd's argument is that his attorney misunderstood the law and, as a result, failed to ask for lesser-included- and inferior-degree-offense instructions. There are two problems with this argument, both of which are fatal to Lloyd's appeal. First, the record does not demonstrate that Lloyd's counsel misunderstood the law. Second, Lloyd would not have been entitled to the instructions had his counsel asked for them.

1. Lloyd has not shown that his attorney misunderstood the law

{¶ 20} There is caselaw to support the notion that an attorney's failure to know the law can cause blunders that amount to deficient performance. In *Williams v. Taylor*, defense attorneys failed to investigate the defendant's background before sentencing, "not because of any strategic calculation but because they incorrectly thought that state law barred access to such records." 529 U.S. 362, 395, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The United States Supreme Court recognized that this failure to investigate, which left undiscovered substantial evidence of childhood trauma and other mitigating evidence, constituted deficient performance. *See id.* at 395-396, 120 S.Ct. 1495. Other courts have also recognized that an attorney's failure to know the law can lead to deficient performance. *See, e.g.*, *Smith v. Dretke*, 417 F.3d 438, 442 (5th Cir.2005) ("failing to introduce evidence because of a misapprehension of the law is a classic example of deficiency of counsel"); *People v. Pugh*, 157 Ill.2d 1, 19, 191 Ill.Dec. 10, 623 N.E.2d 255 (1993) ("counsel's advice, based upon a misapprehension of the law, fell outside the range of competence demanded of attorneys in criminal cases").

{¶ 21} But we are not convinced that Lloyd's attorney misunderstood the law. In arguing that his attorney did not understand the elements of the felonious-assault offense upon which the felony-murder charge was predicated, Lloyd zeroes in on several statements that she made in closing argument. Specifically, his attorney said, "[T]here is no way that Mr. Lloyd could have knowingly been aware that hitting someone with one punch would cause the death of that individual." According to Lloyd, this statement and others like it are proof that his attorney did not know the elements of the crime charged, because the state needed to prove only that Lloyd knowingly caused serious physical harm to the victim. The problem is that this interpretation does not take into account the totality of counsel's closing argument.

{¶ 22} In this case, the serious physical harm that occurred *was* the victim's death. One way of looking at counsel's statement that Lloyd could not have known that one punch would have killed the victim is that she was simply specifying the serious physical harm that was alleged to have occurred.

{¶ 23} Imagine that instead of killing the victim, Lloyd's punch broke his nose. Rather than use the phrase "serious physical harm," Lloyd's attorney could have said: "My client could not have known that one punch would break the victim's nose." It appears to us that this is what was going on here – Lloyd's attorney was simply using a more precise description of the serious physical harm that occurred. And one can understand why she might want the jury to focus on the precise harm that occurred here—no reasonable jury would conclude that Lloyd did not know that a hard-thrown punch to Power's face would cause serious physical harm, but a jury could easily conclude that Lloyd did not know his punch would kill Power. So, Lloyd's counsel had good reason to focus the jury on the specific serious physical harm that occurred here, rather than serious physical harm in the abstract.

{¶ 24} Indeed, other parts of closing argument demonstrate that Lloyd's attorney fully understood the elements of the felonious-assault charge. During closing, counsel also argued to the jury that Lloyd did not knowingly cause "serious physical harm." If we understand defense counsel's other statements as referring to death as the specific serious physical harm that occurred, then the statements work together. In contrast, it would make little sense for counsel to say that Lloyd did not knowingly cause serious physical harm, if she believed that the state was required to show that Lloyd knowingly killed the victim. When counsel's words are read in context, then, it is evident that she understood the law and was merely identifying death as the serious physical harm that happened in this case. We thus reject Lloyd's argument that his defense attorney misunderstood the law.

2. Lloyd's attorney was not deficient for failing to request alternative jury instructions

{¶ 25} Even if we were to assume that Lloyd's counsel misunderstood the law, she was not ineffective for failing to ask for instructions on the lesser-included and inferior-degree offenses. This is because Lloyd was not entitled to the alternative instructions and a request for them would have been futile.

{¶ 26} The court of appeals reviewed the trial court's failure to sua sponte provide instructions on the lesser-included offenses and concluded that the trial court did not err, "plain or otherwise." 2021-Ohio-1808 at ¶ 44. It also found that Lloyd "was not entitled to" an instruction on the inferior-degree

14

offenses and noted that Lloyd's counsel had conceded as much in closing argument. *Id.* at ¶ 45. Lloyd did not advance a proposition of law challenging these conclusions. Thus, we are bound to accept the court of appeals' determination that under any standard, Lloyd was not entitled to the lesser-included and inferior-degree instructions. *See Meyer v. United Parcel Serv., Inc.*, 122 Ohio St.3d 104, 2009-Ohio-2463, 909 N.E.2d 106, ¶ 8, fn. 3 (explaining that the court of appeals' determination on an issue not accepted for review stood as "conclusively established"). But even if one could somehow read Lloyd's arguments before this court as challenging the court of appeals' conclusion that Lloyd would not have been entitled to the alternative instructions had he asked for them, we would conclude that the court of appeals got it right. Recall that a judge is to give instructions on lesser-included and inferior-degree offenses only when the evidence would allow a jury to reasonably reject the greater offense and find the defendant guilty on the lesser-included or inferior-degree offenses. 2021-Ohio-1808 at ¶ 25; *accord State v. Thomas*, 40 Ohio St.3d 213, 216-217, 533 N.E.2d 286 (1988); *Shane*, 63 Ohio St.3d at 632-633, 590 N.E.2d 272.

{¶ 27} For Lloyd to be entitled to the alternative instructions, there needed to be evidence that could cause a jury to reasonably conclude that he did not cause "serious physical harm" to Power, or that he did not do so "knowingly." R.C. 2903.11(A)(1). "Serious physical harm" includes harm that requires hospitalization, incapacitates, disfigures, involves acute or prolonged pain, or carries a substantial risk of death. R.C. 2901.01(A)(5). A person acts "knowingly," in turn, when he "is aware that [his] conduct will probably cause a certain result." R.C. 2901.22(B).

{¶ 28} Here, Lloyd delivered a hard punch to the face of an 83-year-old man. There is no way that a reasonable jury would find that someone throwing this kind of punch to a senior citizen did not knowingly cause serious physical harm. Lloyd might not have known that his punch would kill the victim, but he was certainly aware that it would probably cause serious physical harm. Thus, it would have been error for the trial court to provide instructions on misdemeanor assault and involuntary manslaughter.

{¶ 29} Similarly, Lloyd would not have been entitled to an instruction on aggravated assault and voluntary manslaughter. Aggravated assault, the predicate offense for voluntary manslaughter, requires a serious provocation. And here, there is simply no evidence of provocation. The video of the incident shows nothing that would amount to serious provocation on the part of Power. Nor does any other evidence in the record suggest serious provocation. As Lloyd's counsel put it in closing argument: "Was he provoked in any way? Absolutely not." Thus, even if Lloyd's counsel had asked for these instructions, the trial court would have been compelled to deny the request.

> **{¶ 30}** So, even if we assume that Lloyd's counsel misunderstood the law, counsel was not ineffective for failing to ask for alternative jury instructions. One cannot be ineffective for failing to make a request that would have been denied.
>
> *B. We Do Not Reach Prejudice*
>
> **{¶ 31}** A defendant's failure to make a sufficient showing of either prong of the *Strickland* inquiry is fatal to his claim of ineffective assistance. 466 U.S. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674. Because we conclude that Lloyd has failed to demonstrate that his counsel was deficient, we do not reach the prejudice prong of the *Strickland* inquiry.
>
> **III. CONCLUSION**
>
> **{¶ 32}** Lloyd has failed to establish that his counsel was deficient in failing to ask for instructions on lesser-included and inferior-degree offenses. The judgment of the court of appeals is affirmed.
> Judgment affirmed.

*State v. Lloyd*, 2022-Ohio-4259, 171 Ohio St. 3d 353, 356–60, 218 N.E.3d 737, 741–44.

In order to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair. *Id*. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id.* at 689. *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

> As explained by the United States Supreme Court:
>
>> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105. *See also Kennedy v. Warren*, 428 F. App'x 517, 520 (6th Cir. 2011); *Phillips v. Sheldon*, Case No. 3:12-cv-01609, 2014 WL 185777, at **14-15 (N.D. Ohio Jan. 16, 2014).

Here, the Court finds the Supreme Court of Ohio (hereinafter, the "Supreme Court") reasonably determined trial counsel did not misunderstand the law and was not deficient. (*Lloyd*, 2022-Ohio-4259, ¶¶19, 24.) The Supreme Court considered the totality of counsel's closing argument and submit that her statement that Lloyd did not know his punch would cause Power's death, was maintaining that he did not know death was the specific serious physical harm that he would cause. (*Id.*, ¶¶22-24.) The Supreme Court noted counsel argued that Lloyd did not knowingly cause serious physical harm. (*Id.*, ¶24; *see* Doc. No. 7-4, p. 124 ("He didn't do the obvious thing that one would think someone would do with intent to cause serious physical harm.")) The Supreme Court reasonably found that, when read in context, counsel was

17

identifying death as the serious physical harm that occurred, and thus did not misunderstand the law. (*Id.*, ¶¶22-24.)

Lloyd argues counsel's decision to waive opening statements was evidence of her misunderstanding the law. However, "[a]n attorney's decision not to make an opening statement is ordinarily a mere matter of trial tactics and . . . will not constitute . . . a claim of ineffective assistance of counsel." *Millender v. Adams*, 376 F.3d 520, 525 (6th Cir. 2004) (internal quotation marks omitted); *see also Moss v. Hofbauer*, 286 F.3d 851, 863 (6th Cir. 2002) ("A counsel's failure to make an opening statement . . . does not automatically establish the ineffective assistance of counsel.") *White v. United States*, No. 2:05-CR-174, 2012 WL 3878768, at *2 (S.D. Ohio Sept. 6, 2012) ("defense counsel's decision to waive opening statement was a trial tactic that did not deprive Petitioner of constitutionally effective assistance of counsel.").

Lloyd argues counsel "failed to develop the only defense that mattered – Lloyd's mindset as it related to the underlying felony." (Doc. No. 2-2, p. 16.) But the Sixth Circuit holds that courts cannot evaluate counsel's actions through the benefit of hindsight. *Lewis v. Brown*, No. 21-1681, 2023 WL 3151075, at *2 (6th Cir. Jan. 30, 2023) ("Under *Strickland*'s 'highly deferential' standard, we must presume that Lewis's counsel's actions 'fall[ ] within the wide range of reasonable professional assistance.' 466 U.S. at 689. So we must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' *Id.* And we consider "the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In doing so, we find that Lewis's counsel's actions were reasonable.") Here, it appears counsel chose a defense strategy to focus on the element of "knowingly". (*See* Doc. No. 7-4, pp. 114-15, 119-20, 123-24.) The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002); *see also Harrington*, 562 U.S. at

18

111 (" . . . it is difficult to establish ineffective assistance where counsel's overall performance reflects active and capable advocacy.")

Lloyd's contention that the Supreme Court's decision was contrary to or an unreasonable application of *Strickland* because the court failed to state what impact misunderstanding the law would have on a presumption of competence is not well-taken specious. (Doc. No. 2-2 at 17.) The Supreme Court held Lloyd failed to show that counsel misunderstood the law. Thus, it is unclear why the Supreme Court would then state what impact a misunderstanding would have had on the presumption of competence. The Supreme Court cited *Strickland* and also recognized that an attorney's failure to know the law can cause mistakes that amount to deficient performance – which is in accord with the cases cited by Lloyd. (*Lloyd*, 2022-Ohio-4259, ¶¶14, 17, 20.)

The Supreme Court went on to reason that even if counsel had misunderstood the law, there was no basis for requesting jury instructions on lesser-included offenses. (*Id.*, ¶25.) The Supreme Court reasoned that to be entitled to alternative jury instructions, the evidence would have to be such that a jury could reasonably reject the greater offense and find the defendant guilty of the lesser-included offense, which was not possible here. (*Id.*, ¶26.) The Supreme Court found counsel was not ineffective for failing to ask for alternative jury instructions because the request would have been denied given the hard punch thrown to the face of an 83-year old man. (*Id.*, ¶28-29.)

Because both prongs of *Strickland* must be met, and the Supreme Court found Lloyd failed to establish that his counsel was deficient, the Supreme Court reasonably declined to reach the prejudice prong.

As the Supreme Court made clear in *Harrington*, "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." 562 U.S. at 105. Under this deferential standard, for all the reasons set forth in this Report and Recommendation, the Court finds the Supreme Court of Ohio

19

reasonably determined trial counsel was not deficient. It is therefore recommended that Ground One be DENIED.

### IV. CONCLUSION

For all the reasons set forth above, it is recommended that the Petition be DENIED.

Date: September 19, 2025

     *s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).